IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>KEITH & KIMBERLY MARSH,<br><br>　　　　Debtors.<br><br>―――――――――――――――――<br><br>DAVID ROMO,<br><br>　　　　Plaintiff,<br>v.<br><br>KEITH & KIMBERLY MARSH,<br><br>　　　　Defendant. | Chapter 7<br><br>Case No. 05-15360-PHX-SSC<br><br>Adversary No. 05-985<br><br><br><br>MEMORANDUM DECISION<br><br>(Opinion to Post) |

## **I. PRELIMINARY STATEMENT**

Plaintiff, David Romo, commenced an adversary proceeding against Keith and Kimberly Marsh, the Debtors, on November 28, 2005, to determine whether a debt due and owing to him was nondischargeable under 11 U.S.C. §523(a)(2)(A). The Defendants filed an Answer on January 20, 2006. The Court held a trial on June 26, 2006. At the conclusion of the trial, the Court took this matter under advisement. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334 and 157 (West 2006).

## II. FACTUAL DISCUSSION

On August 19, 2005, the Debtors filed their petition for relief under Chapter 7. Prior to the petition date, on May 11, 2004, the Debtors sold a 2002 Mitsubishi Gallant[1] to David Romo for the amount of $9,500. Mr. Romo paid for the vehicle with two cashiers checks, one in the amount of $6,000; the other for $2,500. Pursuant to their agreement, the remaining consideration of $1,000 was to be paid upon Mr. Romo's receipt of the title to the vehicle.

Mr. Romo took possession of the vehicle immediately, and proceeded to have the vehicle insured. Mr. Romo testified that the Debtors informed him that it would take about three months to obtain the title to the vehicle. The sales contract between the parties, however, is silent on this issue. The contract only states that "$1,000 will be collected upon delivery of the title of the car." There is no indication of a time-line for the delivery of the title.

At the time Mr. Romo purchased the vehicle, he knew the vehicle was encumbered by a lien in the amount of approximately $14,000.[2] After Mr. Romo purchased the vehicle, the Debtors continued to make the payments to the lienholder.[3] The Debtors made payments of approximately $6,164, from May 2004, when vehicle was purchased by Mr. Romo, until April 2005.

The Debtors testified that they had initially been informed by the lienholder that Mr. Romo would be able to use his own insurance on the vehicle. However, the

---

[1] The vehicle was in fairly good condition with only about 21,726 miles. *See* Exhibit A.

[2] *See* Exhibit 1. According to the "Transaction History Detail Print," the principal balance due on the loan as of May 12, 2004 was $14,668.72.

[3] No documentation was provided as to the identity of the actual lienholder. Pursuant to the Debtors testimony, the lien is held by "WFS." The Court directed the Chapter 7 Trustee to investigate whether "WFS" had, in fact, noted their lien on the title. Based upon the Trustee's investigation, it appears that "WFS" did note their lien on the title.

lienholder later determined to place its own insurance ("forced placed insurance") on the vehicle, charging the Debtors an additional amount of $1,259.00 on August 5, 2004, and $1,125.00 on May 20, 2005. The Debtors eventually were unable to make any further payments to the lienholder, and the vehicle was repossessed by the lienholder in August 2005. Subsequently, the lienholder sold the vehicle for $7,600.

### III. LEGAL DISCUSSION

Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud." In the Ninth Circuit, to prove nondischargeablity under §523(a)(2)(A), the Plaintiff needs to show that "(1) that the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations." In re Diamond, 285 F.3d 822 (9th Cir. 2002); In re Slyman, 234 F.3d 1081 (9th Cir. 2000); In re Ettell, 188 F.3d 1141, 1144 (9th Cir. 1999); In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996); In re Eashai, 87 F.3d 1082 (9th Cir. 1996). The Plaintiff must establish nondischargeability by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991). The Plaintiff bears the burden of proof, by a preponderance of the evidence, on all elements of a Section 523(a)(2)(a) request that certain debt be deemed nondischargeable. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991).

The Debtors and Mr. Romo, the Plaintiff, entered into a contract for the sale of a vehicle, as evidenced by a sales contract[4] executed by all of the parties. Pursuant to the agreement, the Debtors represented to Mr. Romo that they would deliver title to the vehicle,

---

**4** *See* Exhibit A.

3

at which point he would deliver the remaining $1,000 of the purchase price. There is no language, however, indicating that they would deliver title within three months, as alleged by the Plaintiff. No doubt, the Plaintiff expected to receive, and the Debtors hoped to transfer, the title within a reasonable period of time. However, based upon the evidence and testimony of the parties, the Court concludes that no representations were made indicating the title would be delivered within three months. Therefore, there is no evidence that the Debtors made false representations, let alone that the false representations were material.

The Court also concludes that the Debtors did not have the requisite intent to defraud. For a debt to be excepted from discharge, the debtor must actually intend to defraud the creditor In re Tsurukawa, 258 B.R. 192 (9th Cir. BAP 2001). However, direct evidence of an intent to deceive is rarely shown. Hence, intent may be "inferred and established from the surrounding circumstances." In re Hultquist,101 B.R. 180 (9th Cir. BAP 1989); In re Anastas, 94 F.3d 1280 (9th Cir. 1996); In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002). Because no single objective factor is dispositive, assessment of intent is, thus left, to the fact-finder. In re Jacks, 266 B.R. 728 (9th Cir. BAP 2001). The intent to defraud a creditor is a finding of fact. In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989).

There is no doubt that the facts of this case are unfortunate. The evidence reflects that during the course of the year from when the vehicle was sold to the Plaintiff, to when it was repossessed, the Debtors continued to make payments to the lienholder. Unfortunately, the forced placed insurance of the lienholder more than doubled the payments on the Debtors' obligation, and made it difficult for the Debtors to payoff the obligation. The Debtors also testified credibly that at the same time as they were trying to resolve the title issue, they incurred a number of unanticipated obligations that forced them to stop paying the lienholder on the vehicle and ultimately caused them to file their bankruptcy petition. The Debtors testified that they attempted to borrow money from family members, but were unable to procure any assistance. The vehicle was eventually repossessed and sold by the lienholder.

4

| | |
|---|---|
| 1 | The Court concludes that the Debtors were proceeding in good faith and did not intend to |
| 2 | defraud the Plaintiff. In this case, the Plaintiff has not carried his burden of proof on all |
| 3 | elements of his claim, and his debt must be discharged. |
| 4 | |
| 5 | **IV. CONCLUSION** |
| 6 | Based upon the foregoing, the Court concludes that the Plaintiff has failed to |
| 7 | establish all the elements of §523(a)(2)(A). Specifically, the Court finds that the Debtors did |
| 8 | not make false representations and did not have the requisite intent to defraud. The entire |
| 9 | debt owed to the Plaintiff is discharged. |
| 10 | The Court will execute a separate order incorporating this Memorandum |
| 11 | Decision. |

DATED this 18th day of September, 2006.

*[signature: Sarah Sharer Curley]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge